IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-477-FL

| | |
|---|---|
| JAMES MARCELL MITCHELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM &** |
| v. ) | **RECOMMENDATION** |
| ) | **(Corrected)** |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. James Marcell Mitchell ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and disability insurance benefits. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-21] be granted, Defendant's Motion for Judgment on the Pleadings [DE-23] be denied, and the case be remanded to the Commissioner for further consideration.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on June 21, 2010, alleging disability beginning May 11, 2004. (Tr. 58, 127.) The application was denied initially and upon reconsideration, and a request for hearing was filed.

(Tr. 58, 64, 91-92.)  On November 3, 2011, a hearing was held before Administrative Law Judge Allan O'Sullivan ("ALJ"), who issued an unfavorable ruling on December 14, 2011.  (Tr. 27, 33.) Plaintiff's request for review by the Appeals Council was denied April 30, 2013, making the ALJ's decision the final decision of the Commissioner.  (Tr. 1.)  Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

I.  **Standard of Review**

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original).  "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original).  Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence.  *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of his past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 74 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment from his alleged onset date of May 11, 2004 through his date last insured of December 31, 2009. (Tr. 22.) Next, the ALJ determined Plaintiff has the following severe impairment: low back pain with myofascial component. (*Id*.) The ALJ further determined that Plaintiff's mental impairment of mental retardation was non-severe. (*Id.*) However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff has the ability to perform medium work with no additional limitations or restrictions. (*Id.*) In making this assessment, the ALJ found Plaintiff's statements about the severity of his symptoms not fully credible. (Tr. 25.) At step four, the ALJ concluded Plaintiff had the RFC to perform the requirements of his past relevant work as a tractor trailer driver as actually and generally performed.[1] (Tr. 26-27.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on several grounds. Plaintiff first contends that the ALJ erred in giving a treating physician's opinion on work restrictions little weight. Second, Plaintiff asserts that the ALJ erred in determining Plaintiff's credibility. Third, Plaintiff argues that the ALJ failed to properly explain why Plaintiff's impairments do not meet or equal Listing 1.04. Fourth, Plaintiff argues that the ALJ erred in failing to apply Medical Vocational Rule 201.00(g) or 202.00(d).

### A. Treating Physician's Opinion

Plaintiff first contends that the ALJ erred in giving Dr. Michael Gwinn's opinion little weight. Plaintiff injured his back in a work-related accident in which he was lifting a box and hit his back, causing it to pop. (Tr. 38-39.) Plaintiff testified that, because of the injury, he suffers from severe back pain. (Tr. 39.) In order to address Plaintiff's back pain, Dr. Gwinn started treating Plaintiff as early as October 24, 2005 and continues to treat him. (Tr. 40, 290.) During Plaintiff's October 24, 2005 appointment, Dr. Gwinn limited Plaintiff's work capabilities stating:

---

[1] The ALJ found Plaintiff could perform his "past relevant work as tractor trailer driver, medium, svp-4 . . . as actually and generally performed." (Tr. 26-27.) However, the VE testified that "the way [Plaintiff] performed his work would be at the semiskilled heavy level." (Tr. 56.)

4

"In my opinion, he is capable of light work and limit lifting [sic] to 20 pounds. Avoid repetitive bending, and suggest a five minute stretch break every 30 minutes." (Tr. 291.)

Generally, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 404.1527(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig v. Chater*, 76 F.3d 585, 590 (1996)) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.*

An ALJ who rejects relevant evidence concerning a claimant's pain or physical condition "should explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence." *Ivey v. Barnhart*, 393 F. Supp. 2d 387, 389 (E.D.N.C. Sept. 29, 2005). Furthermore, "remand is appropriate where an ALJ fails to discuss relevant evidence that weighs against his decision." *Id.* at 290 (citing *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)).

Here, it is not evident whether the ALJ considered the work restrictions Dr. Gwinn placed on Plaintiff on October 24, 2005. Dr. Gwinn consistently kept Plaintiff under these restrictions up to the most recent medical evaluations contained in the record from September 30, 2010. The ALJ notes Dr. Gwinn limited Plaintiff to light exertion, but no mention is made of the other work restrictions which Dr. Gwinn placed on Plaintiff. (Tr. 25.) Thereafter, the ALJ is conclusory in

5

prescribing the weight given to Dr. Gwinn's assessment, stating that "little weight is afforded the opinion of Dr. Gwinn, as it [sic] unsupported by the treatment reports and objective testing and appeared to rely heavily on the claimant's subjective complaints." (Tr. 26.) The ALJ does not mention the lifting or bending restrictions imposed by Dr. Gwinn or Dr. Gwinn's opinion that Plaintiff would need to take breaks every thirty minutes. Because it is not clear whether the ALJ considered Dr. Gwinn's work restrictions or evaluated his opinions in light of his treatment of Plaintiff for five years, the court is unable to determine that the ALJ's decision is supported by substantial evidence. The case should, therefore, be remanded to the Commissioner for further consideration.

### B. Plaintiff's Credibility

Next, Plaintiff argues that the ALJ erred in determining Plaintiff's credibility. In assessing a claimant's credibility, the ALJ must follow a two-step process. First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594–95. Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and . . . be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (eff. July 2, 1996).

The ALJ must consider the following factors in addition to objective medical evidence when assessing the credibility of an individual's statements:

(1) Claimant's daily activities;

(2) The location, duration, frequency, and intensity of . . . pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, received for relief of pain or other symptoms;

(6) Any measures used to relieve pain or other symptoms; and

(7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3.

The ALJ found Plaintiff not fully credible, stating:

> Ultimately, the claimant's statements concerning his impairments and their impact on his ability to work do not support a finding of disability, in light of the claimant's own description of his activities and lifestyle, the degree of medical treatment required, the reports of treating and examining practitioners, and the findings made on examination. . . . The claimant reported that he lived alone and was able to shop, prepare meals, manage his finances, and perform household chores. He also maintained contact with family and friends. . . . Moreover, the claimant's activities are inconsistent with the presence of greater limitations than were found in the aforementioned residual functional capacity assessment.

(Tr. 25-26.) However, this is a mischaracterization of the evidence presented concerning Plaintiff's daily activities. At the hearing, Plaintiff testified that while he tries to perform chores at times, his ability to do so is limited. Plaintiff reported that he washes the dishes and vacuums, but he has to do these "sequentially" and one at a time. (Tr. 41.) He also stated that it "takes a lot out of [him]" and "causes great pain in [his] back." (Id.) Plaintiff further testified that he cannot fill his trashcan because then it would be too heavy for him to empty, and he has to drive half a block to the dumpster in order to take the trash out. (Tr. 42-43.) Plaintiff tries to do laundry but reported that he has fallen when his legs gave out under the weight. (Tr. 43.) Moreover, Plaintiff used to cook but now limits himself to fixing sandwiches. (Tr. 46.)

Plaintiff also described trips to the grocery store, stating that he drives one mile to the grocery store but then requires help to carry his items. (Tr. 42, 44.) Plaintiff cannot lift a case of

7

water and requires someone to help him out of the store and get the case into his car. (Tr. 42.) Once home, if a neighbor is not available to help him, Plaintiff stated he will carry in the waters individually. (*Id.*) Additionally, Plaintiff reported he cannot lift a gallon of milk or soda bottles. (Tr. 46.)

Plaintiff reported "I do more sleeping during the daytime than I do anything else." (Tr. 41.) The pain interrupts Plaintiff's sleep at night. (*Id.*) Plaintiff testified that his day mostly consists of being fatigued and sleeping, and he sits and lies on the floor to try to alleviate his back pain. (Tr. 47.) Plaintiff sleeps three to four times throughout the day. (*Id.*) Moreover, Plaintiff has to stay bent over to brush his teeth because the arm movement causes back pain. (Tr. 45.)

Plaintiff stated that he has tried to walk to the store three to four blocks away from his apartment, but then once he gets there he has to sit on the curb for over an hour before he can walk home. (Tr. 48.) Plaintiff's back pain prevents him from playing with his grandchildren, and he reported that he cannot push a stroller. (Tr. 51.) Plaintiff reported that he used to help his mother around her house by hanging Christmas ornaments, doing chores around the house, and cutting her grass, but his back pain prevents him from doing this. (Tr. 37.) Plaintiff also tries to attend church. (Tr. 44-45.) Plaintiff drives three blocks to the church, but cannot stay for the entire service because the pews cause his back pain to increase. (Tr. 45.)

The medical records support Plaintiff's testimony that his pain is exacerbated by driving, sitting, or standing. (Tr. 243, 351.) Plaintiff's treating physician cleared him to be a barber with the use of a specialized chair allowing Plaintiff to change position as needed. (Tr. 267.) One record indicates that Plaintiff had to change a tire on his truck, but that he experienced "significant

pain." (Tr. 257.) Another record states, "His pain has affected his sleep pattern, his social interactions, ability to do his household chores, and his work." (Tr. 373.)

While, as the ALJ states, Plaintiff reported that he shopped, prepared meals, and performed household chores, the evidence in the record indicates that these abilities are greatly limited. Plaintiff requires help lifting when shopping; he only reported making sandwiches; and he requires rest and makes accommodations when doing household chores. There is no other evidence in the record pertaining to Plaintiff's daily activities beyond Plaintiff's statements and the medical records. Thus, the ALJ has misstated the evidence supporting his credibility determination. The credibility determination is not supported by substantial evidence, and the undersigned recommends that the decision be remanded with instructions that the Commissioner reevaluate Plaintiff's credibility.

### C. Medical Listing 1.04

At step three of the sequential process, the ALJ was required to determine whether Plaintiff's impairments meet or equal an impairment listed in the regulations. Plaintiff argues that the ALJ failed to sufficiently explain why Plaintiff's impairments did not meet or equal Listing 1.04. The burden of proof at step three is on the claimant to show that he meets or equals all the criteria of a listing. *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment does not meet the criteria of a listing, it may nevertheless medically equal the criteria. 20 C.F.R. §§ 404.1525(e)(5), 404.1526. To establish medical equivalence, a claimant must "present medical findings equal in severity to *all* the criteria" for that listing. *Zebley*, 493 U.S. at 531.

9

Listing 1.04, which addresses the disability caused by "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord," requires:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

"Inability to ambulate effectively" is defined by section 1.00B2b:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a

walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.

An ALJ is required to identify and discuss a listing if there is "ample evidence in the record" to support a finding that the impairment meets or is medically equivalent to one of the listed impairments. *Kelly v. Astru*e, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (May 12, 2009). Plaintiff has failed to identify any evidence establishing the initial diagnostic criteria of Listing 1.04. For example, Plaintiff has not identified any imaging or diagnostic evidence suggesting nerve root or spinal cord compromise as required by Listing 1.04. Due to the absence of any evidence suggesting that Plaintiff could potentially meet the requirements of this listing, the ALJ did not commit reversible error by failing to explain why Plaintiff's impairments do not meet or equal the criteria of the listing.

Accordingly, the ALJ's findings at step three of the sequential evaluation are supported by substantial evidence and based upon a proper application of law.

**D. Medical Vocational Rules**

Lastly, Plaintiff argues that the ALJ should have considered as guidance Medical Vocational Rules 201.00(g) or 202.00(d). At step four of the sequential evaluation process, the ALJ determined that Plaintiff was capable of performing his past relevant work. As a consequence, the ALJ did not reach step five and, thus, did not consider the applicability of the Medical Vocational Guidelines. In light of the disposition recommended herein and the possibility that the Commissioner's findings at step four may be substantially different on remand,

the undersigned does not address whether the ALJ should have considered Medical Vocational Guideline 201.00(g) or 202.00(d).

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-21] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-23] be DENIED, and the case be remanded to the Commissioner for further consideration.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 15th day of May 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge