IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-477-FL

| | | |
|---|---|---|
| JAMES MARCELL MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the parties' cross-motions for judgment on the pleadings (DE 21, 23). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Kimberly A. Swank issued a memorandum and recommendation ("M&R") (DE 26), wherein it is recommended that the court grant plaintiff's motion, deny defendant's motion, and remand the case to the Commissioner for further consideration. Defendant timely filed objections to the M&R, and plaintiff responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge, albeit partially on different grounds.

**BACKGROUND**

Plaintiff filed an application for supplemental security income and disability insurance benefits on June 21, 2010, alleging disability beginning May 11, 2004. This application was denied initially and upon reconsideration. A hearing was held on November 3, 2011, before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled in a decision dated December 14, 2011. The appeals council denied plaintiff's request for review on April 30,

2013. Plaintiff filed a motion for leave to proceed *in forma pauperis* which was granted July 3, 2013, and the clerk filed plaintiff's complaint the same day.

**DISCUSSION**

A.     Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the

2

record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform his past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 11, 2004, through the date he was last insured on December 31, 2009.[1] At step two, the ALJ found that plaintiff had the following severe impairment: low back pain with myofascial component. However, at step three, the ALJ further determined that this impairment was not severe enough to meet or medically equal one of the impairments in the regulations. Prior to proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform medium work with no additional limitations or restrictions. In making this assessment, the ALJ found plaintiff's statements about the severity of his symptoms not fully credible. At step four, the ALJ concluded plaintiff was capable

---

[1] The ALJ found that plaintiff's earnings record showed that he had "acquired sufficient quarters of coverage to remain insured through December 31, 2009," and therefore that plaintiff was required to establish disability on or before that date to receive disability and disability insurance benefits.

3

of performing past relevant work as a tractor trailer driver as actually and generally performed.

B.  Analysis

The magistrate judge determined that the case must be remanded because (1) it was not clear whether the ALJ considered certain work restrictions imposed by plaintiff's physician, Dr. Michael Gwinn, or evaluated Dr. Gwinn's opinions in light of his treatment of plaintiff for five years; and (2) the ALJ misstated the evidence supporting his determination that plaintiff was not fully credible. Upon *de novo* review of defendant's objections, the court finds that remand is required, albeit partially on different grounds than articulated in the M&R.  Specifically, the court concludes that the ALJ failed to properly discuss relevant evidence that weighed against his decision and that may have affected his evaluation of Dr. Gwinn's opinion.  Because remand is required on this basis, the court will not reach plaintiff's remaining arguments for remand.

An ALJ has a duty to explain the administrative decision so as to enable meaningful judicial review.  "While the [Commissioner] is empowered . . . to resolve evidentiary conflicts, the [Commissioner], through the ALJ, is required to explicitly indicate 'the weight given to all relevant evidence.'"  Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987) (quoting Gordon v. Schweiker, 725 F.2d 231 (4th Cir. 1984)).  In particular, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  A denial of benefits is not supported by substantial evidence if the ALJ "has [not] analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits."  Gordon, 725 F.2d at 236.  "[R]emand is appropriate where an ALJ fails to discuss relevant evidence that weighs against his decision."  Ivey

v. Barnhart, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (citing Murphy, 810 F.2d at 438). Furthermore, "the ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir.1986).

When making an RFC assessment, an ALJ "must always consider and address medical source opinions." SSR 96-8p, 1996 WL 374184, at *7. In addition, an ALJ generally must give more weight to the opinion of a treating physician "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Johnson, 434 F.3d at 654. A "treating source" means an "acceptable medical source who provides . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.902; see Meyer v. Astrue, 662 F.3d 700, 705 n. 1 (4th Cir. 2011).

"If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7. The ALJ "must 'give good reasons in [his] notice of determination or decision for the weight [he] give[s][the] treating source's opinion.'" Russell v. Comm'r of Soc. Sec., 440 F. App'x 163, 164 (4th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). In particular, "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

Dr. Gwinn provided ongoing treatment for plaintiff over a number of years, beginning

October 24, 2005, and the parties do not dispute he is a "treating source." On his initial consultation, Dr. Gwinn opined that plaintiff was "capable of light work and limit lifting [sic] to 20 pounds. Avoid repetitive bending, and suggest a five-minute stretch break every 30 minutes." (Tr. 291). Dr. Gwinn maintained these work restrictions throughout his treatment of plaintiff. The ALJ's RFC is in conflict with these findings, because it sets a higher exertional level of work at medium, which entails lifting up to fifty pounds at a time, and frequent bending-stooping. 20 C.F.R. §§ 404.1567(c), 416.967(c); SSR 83-10, 1983 WL 31251, at * 5-6 (January 1, 1983).

The ALJ explained that he gave "little weight" to Dr. Gwinn's opinion because he found the opinion "unsupported by the treatment reports and objective testing and [because the opinion] appeared to rely heavily on the claimant's subjective complaints." (Tr. 26). The ALJ did not specify what aspects of the treatment reports and objective testing undermined Dr. Gwinn's opinion. However, in summarizing the objective testing record to discredit plaintiff's own accounts of pain, the ALJ cited to the fact that "objective medical tests failed to show any significant abnormalities" as a reason for discrediting plaintiff's statements regarding his symptoms. (Id. at 25). He noted that plaintiff "had only mild disc bulges with no herniated discs, spinal stenosis, neuroforaminal narrowing, or nerve root impingement." (Id. at 26). Furthermore, the ALJ noted that physicians had recommended "only conservative treatment to include medication, physical therapy, and injections," and that "[s]urgery has never been recommended." (Id.). Other reasons for discrediting plaintiff's statements included findings included findings on motor strength, reflexes and sensation, normal gait and stance, the lack of a prescription for a cane or other assistive device, plaintiff's response to medication, and plaintiff's account of his daily life activities. (Id. at 25-26).

6

In this case, although the ALJ provided reasons for giving "little weight" to Dr. Gwinn's opinion, the explanation is insufficient, because the ALJ failed to note additional relevant evidence that weighed against his decision. First, the decision fails to reference or discuss a "Return to Work Guidelines Testing" form, which states that plaintiff could bend forward only occasionally, and occasionally lift twenty pounds, and required a "flexible sit-stand schedule," among other findings. (Tr. 392). The form is signed by an "Evaluator" and a "Supervising Therapist," however, the form states that "The employee has been released by his physician to return to work with the above guidelines." Id. The physician listed on plaintiff's "Return to Work Testing" is Paul Reiker, M.D. (Id.). The form is dated August 24, 2005, approximately two months prior to Dr. Gwinn's initial consultation. (Id.) In his initial consultation notes, Dr. Gwinn appears to refer to the form by noting that plaintiff had "a functional capacity evaluation, which indicated that he was capable of light work . . . ." (Id. at 290).

As noted, Social Security Ruling 96-8p requires an ALJ to "consider and address medical source opinions." SSR 96-8p, 1996 WL 374184, at *7. The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources." See 20 C.F.R. §§ 404.1502, 416.902; SSR 06-03P, 2006 WL 2329939, at *1 (Aug. 9, 2006). An "acceptable medical source" includes licensed physicians. 20 C.F.R. §§ 404.1502, 416.902; SSR 06-03P, 2006 WL 2329939, at *1. "Other sources" include "[m]edical sources who are not 'acceptable medical sources,' such as . . . therapists." 20 C.F.R. §§ 404.1502, 416.902; SSR 06-03P, 2006 WL 2329939, at *1. Medical opinions from an "acceptable medical source" may justify giving that opinion greater weight. In addition, although the regulations "do not address

7

explicitly how to evaluate evidence (including opinions) from 'other sources,' they do require considerations of such evidence when evaluating an 'acceptable medical source's' opinion." SSR 06-03p, 2006 WL 2329939, at *4.

As a licensed physician, Dr. Reiker would qualify as an "acceptable medical source," and the form appears to represent a "medical source opinion" which the ALJ was required to address. SSR 96-8p, 1996 WL 374184, at *7. Even if it represented an "other source" opinion because it was completed by a therapist, consideration of this form was required to evaluate the opinions of the "acceptable medical sources" considered in the decision, including Dr. Gwinn. SSR 06-03p, 2006 WL 2329939, at *4.

In addition, the ALJ's analysis fails to address the "trigger points" which doctors observed in plaintiff's back. While the ALJ noted that plaintiff had received "trigger point injections," he did not discuss whether or how much the trigger points themselves could support plaintiff's account of pain. These trigger points were noted by Dr. Kimberly Greenwald (Tr. 376), and on several occasions by Dr. Gwinn (Id. 259, 274, 283). "Trigger points" have been variously described in caselaw and medical literature, in terms indicating that such points can themselves be sources of pain. See, e.g., Faure v. Astrue, CIV.A. 11-7736, 2012 WL 5869246, at *3, n. 12 (E.D. Pa. Aug. 16, 2012) report and recommendation adopted, CIV.A. 11-7736, 2012 WL 5866079 (E.D. Pa. Nov. 20, 2012) ("Trigger nodules, or trigger points, are small, painful growths that can cause pain.") (citing U.S. Nat'l Library of Med., *Bruxism*, Medline Plus, http://www.nlm.nih.gov/medlineplus/ency/article/001413.htm); Dragan v. Astrue, 1:11-CV-44, 2011 WL 7430207, at *6, n. 3 (S.D. Ohio Dec. 15, 2011) report and recommendation adopted, 1:11-CV-044, 2012 WL 642868 (S.D. Ohio Feb. 28, 2012) ("Trigger points are 'discrete, focal, hyperirritable

spots located a taut band' of muscle fiber, and may be caused by a variety of conditions.") (citing Http://www.ncbi.nlm.nih.gov/pubmed/11871683.); Crysler v. Astrue, 563 F. Supp. 2d 418, 443 (N.D.N.Y. 2008) ("Trigger points [are] localized hardenings in skeletal muscle tissue. Pain is referred to a location distant from the trigger points.") (citing Medical Dictionary Online, available at http://www.online-medical-dictionary.org/omd.asp? q=myofascial+pain+syndrome).

Plaintiff's treatment records suggest that the trigger points could be objective evidence in the treatment notes of plaintiff's pain. Dr. Gwinn places these trigger points in his "objective" findings from physical examinations. (Tr. 259, 283). Trigger point injections were a method of plaintiff's prescribed treatment for a period of time, including while under Dr. Gwinn's care, until it appears they were no longer effective. (See, e.g., Tr. 271, 274, 277). In a report dated November 9, 2004, Dr. Keith Kittelberger stated that he would "begin with trigger point injections to see if we can settle this patient's pain down in the right low back area, however, if these modalities fail we can certainly look for other problems that might be the source of his pain such as disk problems." (Id. at 374). This statement may indicate that trigger points could be an independent source of pain, alternative to "other problems that might be the source of his pain."

This omitted evidence was particularly relevant to the ALJ's decision because part of the basis for affording "little weight" to the opinion of Dr. Gwinn was his finding that "objective" testing did not support the limitations they described. Because the ALJ failed to discuss the evidence noted above, the reasons he given for rejecting Dr. Gwinn's opinion are insufficient. This evidence calls into question whether "the treatment reports and objective testing" truly fail to corroborate Dr. Gwinn's opinion. It is not clear whether objective methods were used to complete the "Return to Work Guidelines Testing" form which closely parallels Dr. Gwinn's opinions regarding plaintiff's ability to lift and bend, and which may have been used to support his opinion

of plaintiff's work restrictions. Furthermore, while objective testing may not have identified disc problems, spinal stenosis, neuroforaminal narrowing, or nerve root impingement, it appears to have identified trigger points which, as explained above, may be an alternative source of plaintiff's pain. Moreover, the ALJ appears to have relied on the fact that no physician has recommended surgery for plaintiff's condition. However, if the trigger points are indeed a source of plaintiff's pain, it is not clear from the evidence in the record that surgery would be an effective method of treatment for these causes. Nor is it clear what whether the pain from trigger points would necessarily impact motor strength, reflexes or sensation, or gait and stance. To the extent additional information was necessary to properly evaluate the Return to Work Guidelines Testing form or the possible connections between plaintiff's pain and the "trigger points," the ALJ failed to fulfill his duty to develop the record. See Cook, 783 F.2d at 1173.

Defendant refers to various parts of the record which it argues supports the ALJ's decision to afford "little weight" to Dr. Gwinn's opinion. It argues that the form should be disregarded because the findings "are even more extreme than those Dr. Gwinn offered," reasoning that "[s]ince there is no basis in the treatment notes to support the limitations Dr. Gwinn set forth, there is no support for these more extreme findings either." (DE 24, at 11-12). Yet this assumes that the Return to Work Testing could not itself provide an objective basis in the treatment notes supporting the limitations that were recommended. Because the form was not addressed at all, and the basis for the Return to Work Testing assessment is not provided, it is not possible to evaluate the document on review. As to the trigger points, defendant's arguments do not address how these should be evaluated. At any rate, the court cannot determine how consideration of the omitted evidence would have effected the analysis. "[I]t is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays v. Sullivan,

907 f.2d 1453, 1456 (4th Cir. 1990). Accordingly, the ALJ must in the first instance provide sufficient explanation for his decision before the court can conclude that it is "supported by substantial evidence and reached through application of the correct legal standard." See Craig, 76 F.3d at 589; see also Pearson v. Colvin, No. 4:12-CV-23-FL, 2013 WL 3243550, at *4 (June 26, 2013).

This is not to say that the Return to Work Guidelines Testing form necessarily should have changed the ALJ's conclusion. Nor is it to say that trigger points in fact were the cause of plaintiff's pain, or that they limited his activities to the extent found by Dr. Gwinn. The ALJ may have had reason to discount this evidence. However, the decision fails to note or address it. Accordingly, the ALJ neglected his duty to explain how material inconsistencies and ambiguities in the case record were considered and resolved. SSR 96-8P, 1996 WL 374184 at *7. The decision fails to indicate the weight given to this relevant evidence weighing against the ALJ's decision, and remand is appropriate. Murphy, 810 F.2d at 837; Ivey, 393 F. Supp. 2d at 390. Because remand is required on this basis, the court will not reach plaintiff's remaining grounds for reversal of the decision.

## CONCLUSION

Based on the foregoing, upon *de novo* review, and upon considered review of the record, the court GRANTS plaintiff's motion for judgment on the pleadings (DE 21), DENIES defendant's motion for judgment on the pleadings (DE 23), and REMANDS this matter to the Commissioner, pursuant to sentence four of 42 U.S.C. §§ 405(g), for further consideration in accordance with this order.

SO ORDERED, this the 9th day of September, 2014.

LOUISE W. FLANAGAN
United States District Judge